No. 2754

·Second Circuit

HART v. TOWN OF LAKE PROVIDENCE

(December 10, 1926.   Opinion and Decree.)
(January 28, 1927.   Rehearing Refused.)

(*Syllabus by the Court*)

1. Louisiana   Digest—Municipalities—Par. 246.

A municipality engaged in the business of generating and selling electricity for sale to the occupants of the town is liable for damages for its laches to the same extent as a private corporation engaged in a similar enterprise would be.

  Elias vs. City of New Iberia, 137 La. 691, 69 South. 141.

  Solomon vs. City of New Orleans, 156 La. 634, 101 South. 1.

  Bannister vs. City of Monroe, 4 La. App. 182.

2. Louisiana   Digest—Municipalities—Par. 246.

Incorporated towns in Louisiana have full control over and are responsible for not maintaining their streets free from danger to foot or vehicle traffic; and where such a town owns and operates its own electric light plant and strings wires on poles along its streets for the transmission of electricity, it is guilty of negligence if it allows a tree with a dead limb 8 to 10 inches in diameter and 35 to 40 feet long on it to stand in a public street in close proximity to an electric light wire so that it is dangerous for the public to travel along the street.

  Act 136 of 1898.

  McCormack vs. Robin, 126 La. 598, 52 South. 779.

  Robertson vs. Town of Jennings, 128 La. 795, 55 South. 375.

3. Louisiana Digest—Municipalities—Par. 256, 257, 260.

A tree standing in First street in an incorporated town in Louisiana with a dead limb 8 to 10 inches in diameter and 35 to 40 feet long on it is a menace to the safety of the public and is in itself a signal of danger constituting constructive notice to the governing authorities of the town.

Lorenz vs. City of New Orleans, 114 La. 802, 38 South. 566.

4. Louisiana Digest—Municipalities—Par. 151, 260; Electricity—Par. 4, 6.

Where the superintendent of an electric light plant owned and operated by an incorporated town had known for more than a year that a tree with a dead limb 8 to 10 inches in diameter and 35 to 40 feet long on it stood in a public street of the town in dangerous proximity to an elecertic light wire and took no steps to remove it or protect the wire from the impending danger of the limb breaking and falling is guilty of culpable negligence making his employer responsible for injuries resulting from the limb breaking off and falling.

Williams vs. La. E. L. & P. Co., 43 La. Ann. 295, 8 South. 938.

Atkins vs. Bush, 141 La. 180, 74 South. 897.

Jacobs vs. Jacobs, 141 La. 272, 74 South. 992.

5. Louisiana Digest—Municipalities—Par. 263.

Persons lawfully making use of a public street in an incorporated town are not guilty of contributory negligence in not assuming that the town authorities have failed to make the street safe for use by the general public on foot or in vehicles.

Buechner vs. City of New Orleans, 112 La. 599, 36 South. 603.

Nessen vs. City of New Orleans, 134 La. 455, 64 South. 286.

Appeal from the Sixth Judicial District Court of Louisiana, parish of East Carroll. Hon. F. X. Ransdell, Judge.

Action by Mrs. Susan E. Hart, et al., against the Town of Lake Providence.

There was judgment for plaintiffs and defendant appealed.

Judgment amended and affirmed.

James H. Gilfoil, Jr., of Lake Providence, attorney for plaintiffs, appellees.

Robert P. Kennedy, of Lake Providence, attorney for defendant, appellant.

STATEMENT OF THE CASE.

REYNOLDS, J. This is a suit by Mrs. Susan E. Hart, in her own right and as tutrix of her minor children Susan Helen Hart, Charles M. Hart, Jr., James Michael Hart and Ernest Erwin Hart, issue of her marriage with Charles M. Hart, to recover damages for his death resulting from a guy-wire pole to which was attached a guy-wire bracing an electric light wire pole, part of an electric light and current plant owned and operated by the town of Lake Providence, falling on plaintiffs' husband and father, while he was traveling along First street in that town in an automobile, striking him on the head, fracturing his skull, breaking his neck and causing his death. The cause of the guy-wire pole falling was the falling on the guy-wire stretching from it to a nearby electric light pole of a dead limb 8 to 10 inches in diameter and 35 to 40 feet long from a tree standing in the public street in close proximity to the guy-wire pole.

Plaintiffs allege that the injury to and death of Charles M. Hart was the result of the negligence of the governing authorities of the town of Lake Providence in permitting the tree and dead limb on it to remain where they were.

Defendant denied liability on the ground that the death of Charles M. Hart was due

to an act of God or vis major. It also denied that it was guilty of any negligence and alleged contributory negligence on the part of the deceased.

On these issues the case was tried and there was judgment in favor of the plaintiffs for $15,000.00; in favor of Mrs. Susan E. Hart for $7,000.00 and in favor of the minors for $8,000.00.

The defendant has appealed.

### OPINION.

The evidence clearly establishes that the husband and father of plaintiffs, Charles M. Hart, was killed on February 22, 1925, on a public street of the town of Lake Providence by a guy-wire pole falling on and crushing his head while he was traveling along the street in an automobile and that the cause of the falling of the guy-wire pole was the breaking and falling of a dead limb 8 to 10 inches in diameter and 35 to 40 feet long from a tree standing in the street nearby onto the guy-wire stretching from the guy-wire pole to a nearby electric light wire pole.

Defendant contends that the falling of the limb was vis major or an act of God for which it is not responsible.

An act is held to be vis major only when it is of such nature that ordinary foresight and prudence could not anticipate it.

It is a matter of common knowledge that the wind often blows hard in this state and that a dead limb on a tree is liable to fall any time, even in an ordinary wind. It is necessary, therefore, that we should consider the kind of wind the evidence shows was blowing at the time the limb fell.

Defendant's witness, G. M. Franklin, testified, page 89:

"Q. Mr. Franklin, what would you consider the nature of that wind?
"A. Pretty strong."

Steve Voelker, another witness of defendant, testified, pages 90 and 91:

"Q. Do you remember that a cloud came up that evening and resulted in rain and wind?
"A. Yes.
"Q. From your recollection, please state what was the nature of it?
"A. Rain, rather severe, heavy; I do not remember any wind more threatening and violent."

Richard Bell, a witness for defendant, testified, page 94:

"Q. Do you remember the condition of the weather on the evening of February 22, 1925?
"A. Well, I know that we had a rain and a little wind, if that is the evening that Mr. Hart was killed; I don't remember it otherwise on that date."

Meyer Kaufman, another witness for defendant, testified, page 102:

"Q. Would you say that it was of great violence than usual?
"A. I have seen storms something like it before; I don't know that it was anything unusual."

W. P. Hider, another witness for defendant, testified, page 228:

"Q. Could you state the conditions of the atmosphere at that time?
"A. Well, I would say threatening to a storm.

* *

"Q. This wind you speak of, was never a hurricane, or a tornado?
"A. No, sir."

These five witnesses as to the nature of the wind blowing at the time of Mr. Hart's death strongly corroborates the testimony of plaintiffs' witnesses that the wind at the time was not out of the ordinary, and we are satisfied that it was not

such a one as could not have been foreseen.

Besides, a dead limb 8 to 10 inches in diameter and 35 to 40 feet long is liable to break and fall in the slightest wind or even in the absence of any wind from its own weight.

In our opinion defendant's contention that the cause of the dead limb was vis major for which it is not responsible cannot be sustained on the evidence in the case.

Our learned brother of the district court, in an able written opinion reviewed much of the evidence and said, in part—

"We next come to the contention of defendant that the death of Charles M. Hart was an act of God. In this connection it is urged that a storm raged at the time of his death, and that he suffered death as a direct cause of that storm. The evidence on this question is conflicting. The testimony of those at the scene of the accident is to the effect that the wind blew hard, but that they did not consider it a storm, and that a hard gust came up which blew the limb down, though at the place of the accident nothing else was blown down, and it seems to me that this physical fact connected with the evidence of those present and observing the conditions, negatives the idea that the wind blowing at the time of Mr. Hart's death was one of those extraordinary revulsions of nature which would necessitate the classing of accidents caused therefrom as acts of God. Such events being purely and simply consequences flowing directly from cyclones, hurricanes, earthquakes, etc., of extraordinary violence. The fact that Amacker and the Cummings and Moore sought no special shelter but rather went outside to view the reputed storm, indicated a state of mind on their part which negatived a belief of the existence of a strong storm.

"It is also alleged that C. M. Hart was guilty of contributory negligence and that if the city was negligent his heirs are thereby precluded from recovering damages from the city. With this contention I cannot agree. Mr. Hart did what the many others who were out on that afternoon and who testified in this case, did, excepting possibly Jas. N. Turner who at the time of the accident was some twelve miles away, i. e., tried to go home by the most direct route. They did not stop on the way; neither did he. There seems to have been a general and common purpose, i. e., that it was safe to drive home."

The finding of the trial judge as to the nature of the wind that was blowing at the time of the lamentable accident and as to the deceased's being entirely free from contributory negligence is entirely in accord with the evidence.

In an able and unusually readable brief counsel for defendant refers us to the cases of:

Wiltz vs. City of New Orleans, 2 La. App. 444.

Minor vs. City of New Orleans, 3 La. App. 448.

James vs. City of New Orleans, No. 8050, Orl. App.

The last named case has not been published, so far as we have been able to ascertain, and we can only judge of its applicability to the present case by the portion of it quoted in Wiltz vs. City of New Orleans, and that portion does not, in our opinion, indicate that the holding in that case in any way conflicts with our holding in this one.

In each of the other two cases the court held that the city was not liable on the ground that it had not been actually or constructively notified of the dangerous condition of the sidewalk causing the injury complained of.

In the present case we have expressly held that a dead limb 8 to 10 inches in diameter and 35 to 40 feet long remaining on a tree standing in a public street of an incorporated town for more than a year in dangerous proximity to an electric light wire strung on poles along that street is constructive notice to the governing authorities of the town of its nature and presence.

This brings us to the question of damages. It is not contended that the deceased suffered any from the injury. His death was instantaneous from the blow he received. Nor is it contended that the defendant is a populous or rich town. After much deliberation we have concluded that an award of $10,000.00 for all of the plaintiffs would be a fair allowance in this case.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended by reducing the award in favor of Mrs. Susan E. Hart from $7,000.00 to $3,000.00, and the award in favor of Susan Helen Hart, Charles M. Hart, Jr., James Michael Hart, and Ernest Irwin Hart from $8,000.00 to $7,000.00; and as thus amended the judgment appealed from is affirmed. Defendant to pay the costs of the lower court; the plaintiffs those of this court.

---

ON  APPLICATION  FOR  REHEARING.

Per curiam.

The judgment of this court, amending and affirming the judgment appealed from, by oversight omitted to allow interest on the sums awarded plaintiffs.

It is agreed by counsel for both plaintiffs and defendant that our judgment be so amended as to allow interest on the amounts awarded, and, further agreed, that the court shall refuse a rehearing.

It is accordingly ordered, adjudged and decreed that the judgment rendered by this court be amended so as to read as follows:

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended by reducing the award in favor of Mrs. Susan E. Hart from $7,000.00 to $3,000.00, and the award in favor of Susan Helen Hart, Charles M. Hart, Jr., James Michael Hart, and Ernest Irwin Hart from $8,000.00 to $7,000.00; the said amounts to bear interest at the rate of five per cent per annum from judicial demand until paid; and, as thus amended, the judgment appealed from is affirmed. Defendant to pay the costs of the lower court; the plaintiffs those of this court.